UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY BUCHANAN,

        Petitioner,                      Hon. Janet T. Neff

v.                                                  Case No. 1:11-CV-1359

CARMEN PALMER,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on Buchanan's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Buchanan's petition be **denied**.

**BACKGROUND**

        As a result of events which occurred on July 2, 2005, Petitioner was charged with the following crimes: (1) assault with the intent to commit a felony (extortion) and (2) assault with a dangerous weapon. (Trial Transcript, February 10, 2009, 21-22). Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**Amanda Bissell**

On the date in question, Bissell and her cousin Tiffany Cole were visiting Bissell's cousin, James Bissell. (Trial Transcript, February 11, 2009, 32-35). James Bissell resided in a building in which several apartments were located. (Tr. 35-36). Petitioner and Curtis James also resided in the same building, albeit in separate apartments. (Tr. 37-38). Sometime that morning, Tiffany Cole needed to make a telephone call. (Tr. 40). Because James Bissell had departed to run an errand, the pair went to Curtis James' apartment to ask if they could use his phone. (Tr. 40-41). James' apartment was located on the same landing as James Bissell's apartment, approximately 8-10 feet away. (Tr. 40-41). Curtis James answered his door and gave his cell phone to Bissell and Cole, telling them simply to "bring it back when you're done." (Tr. 41-42).

After receiving the telephone, Bissell and Cole returned to the doorway of James Bissell's apartment so that Cole could make her telephone call. (Tr. 43). As the pair was standing in the doorway, Petitioner approached Curtis James' apartment. (Tr. 43-44). James opened his door at which point Petitioner entered. (Tr. 44). Petitioner did not completely close the door to James' apartment, however. (Tr. 44-45). Bissell overheard Petitioner tell James to "give me my f-ing money" after which Petitioner exited James' apartment. (Tr. 45-46). Bissell and Cole then walked back to James' apartment to return the phone. (Tr. 45-46). The door was answered by one of James' friends to whom the phone was returned. (Tr. 45-46). Bissell could not recall the name of James' friend. (Tr. 46).

A few moments later, while Bissell and Cole were standing in the doorway to James Bissell's apartment, Petitioner and another man returned to James' apartment. (Tr. 46-47). Petitioner was carrying a metal baseball bat. (Tr. 47-48). Petitioner opened the door to James'

apartment and began beating James, who was standing "just inside his door." (Tr. 48-49). Petitioner struck James "pretty hard" with the baseball bat 4-5 times. (Tr. 50-51). Petitioner again told James to "give him his f-ing money." (Tr. 52-53). Petitioner told James that if he did not pay him the money he would "hurt him or kill him." (Tr. 53). Petitioner then spotted Bissell and Cole and told then that if they "told anybody," he would "hurt" them. (Tr. 53).

**Tiffany Cole**

On the date in question, Cole and Amanda Bissell were visiting Cole's brother, James Bissell. (Trial Transcript, February 11, 2009, 79). Bissell lived in a building containing several apartments. (Tr. 80). Two apartments were located in the upstairs portion of the building, James Bissell's apartment and Curtis James' apartment. (Tr. 80-81). Petitioner lived in another apartment in the same building. (Tr. 81-82). Sometime that morning Cole needed to make a telephone call and because her brother was away, she and Amanda Bissell walked next door to Curtis James' apartment to ask to borrow his phone. (Tr. 83-85).

After being given James' phone, Cole and Amanda Bissell walked down the hallway so that Cole could make her call. (Tr. 85-86). While Cole was talking on the phone, Petitioner entered James' apartment and told James to "give me my money." (Tr. 87-88, 97). Petitioner told James that if James did not give him his money, Petitioner would kick his ass. (Tr. 88-89). Petitioner then exited James' apartment. (Tr. 89). When Cole walked back to James' apartment to return his phone, Cole noticed that a friend of Curtis James was visiting James. (Tr. 89-90). Cole could not, however, recall the name of James' friend. (Tr. 90).

A "short time" later, Petitioner returned to James' apartment. (Tr. 90-91). Petitioner

3

entered James' apartment and began striking him with a baseball bat. (Tr. 91-92). Because the door to James' apartment was "cracked open," Cole was able to observe Petitioner striking James. (Tr. 92). As Petitioner exited James' apartment he told Cole and Amanda Bissell that if they "tell on him, he's going to kill [them] too." (Tr. 93-94).

**Mike Lambsma**

As of July 2, 2005, Lambsda was employed as a police officer for the City of Muskegon. (Trial Transcript, February 11, 2009, 113). On that date, Lambsda was dispatched to Curtis James' apartment. (Tr. 113-17). Lambsda discovered James "slouched over on the couch." (Tr. 116). Lambsda placed James on the floor and "felt again for a pulse, [but] didn't feel one." (Tr. 116-17). Lambsda began performing CPR until paramedics arrived. (Tr. 117).

**Cory Luker**

As of July 2, 2005, Luker was employed as a Detective with the Muskegon Police Department. (Trial Transcript, February 11, 2009, 127). On this date, Luker was assigned to investigate the assault of Curtis James. (Tr. 127). As part of his investigation, Luker showed photographic line-ups, separately, to Amanda Bissell and Tiffany Cole, both of whom identified Petitioner as James' assailant. (Tr. 129-35). Several days later, Petitioner agreed to be interviewed by Luker and another detective. (Tr. 133-34). Petitioner acknowledged that James owed him three hundred dollars a circumstance which made him "unhappy." (Tr. 135-37). Petitioner acknowledged that he "confronted" James on the morning in question "about the money" at which point there was an "altercation." (Tr. 135-36). Petitioner, however, denied assaulting James. (Tr. 137). Petitioner

theorized instead that "perhaps, you know, one of the girls assaulted him." (Tr. 138-39).

**Dr. Brian Hunter**

As of 2005, Hunter was employed as a medical examiner and forensic pathologist for Muskegon County. (Trial Transcript, February 11, 2009, 149-50). Curtis James died subsequent to the aforementioned assault after which Dr. Hunter performed an autopsy. (Tr. 152). The autopsy revealed that James died from "blunt force head injury" that the doctor concluded "could be caused by a baseball bat." (Tr. 156, 164).

Following the presentation of evidence, the jury found Petitioner guilty of (1) assault with the intent to commit a felony (extortion) and (2) assault with a dangerous weapon. (Dkt. #17 at 12). Petitioner was sentenced, as an habitual felon, to serve 9.5-20 years in prison on the assault with the intent to commit a felony conviction and 4-8 years in prison on the assault with a dangerous weapon conviction. (Sentencing Transcript, March 9, 2009, 11-12). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

> I. The trial court unlawfully deprived the defendant of his due process, equal protection, and other protected rights under the United States and Michigan constitutions when it entered a judgment of conviction and sentence on evidence that is insufficient to support the assault with intent to commit extortion and assault with a dangerous weapon convictions.
>
> II. The trial court unlawfully deprived the defendant of his due process, equal protection, and other protected rights under the United States and Michigan constitutions when it scored 100 points on OV-3.
>
> III. The trial court unlawfully deprived the defendant of

5

                his due process, equal protection, and other protected rights under the United States and Michigan constitutions when it failed to take into account all mitigating evidence in sentencing th edefendant.

IV.    The trial court unlawfully violated the United States and Michigan constitutions in sentencing the defendant to a prison term of 9-1/2-20 years on a habitual offender 3d supplement arising out of the assault with intent to commit extortion conviction and to a prison term of 4-8 years on a habitual offender 3d supplement arising out of the ADW conviction.

V.    Petitioner was denied his constitutional right to effective assistance of counsel when his counsel failed to investigate or call a witness whose testimony was exculpatory.

VI.    Prosecutorial misconduct denied Petitioner a fair trial.

VII.    Petitioner was denied the effective assistance of an attorney on appeal.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Buchanan*, Case No. 290942, Opinion (Mich. Ct. App., July 15, 2010). Asserting issues I, V-VII above, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. Buchanan*, No. 141852, Order (Mich., Feb. 7, 2011). Asserting these same four issues, Petitioner initiated the present action on December 27, 2011.

## STANDARD OF REVIEW

Buchanan's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

>    (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable

application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly

8

established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

I.       **Sufficiency of the Evidence**

Petitioner asserts that there did not exist sufficient evidence to convict him of assault with the intent to commit a felony or assault with a dangerous weapon. Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Under Michigan law in effect during the relevant time period, an individual was guilty of assault with the intent to commit a felony if he assaulted another person "with intent to commit any burglary, or any other felony, the punishment of which assault is not otherwise in this act prescribed." *People v. Strand*, 539 N.W.2d 739, 740 (Mich. Ct. App., Aug. 29, 1995) (quoting Mich. Comp. Laws § 750.87). An individual was guilty of assault with a dangerous weapon (a.k.a. felonious assault) if the following elements were satisfied: (1) an assault; (2) with a dangerous

weapon; (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *See, e.g., People v. Charbonneau*, 2004 WL 1752959 at *1 (Mich. Ct. App., Aug. 5, 2004) (citing Mich. Comp. Laws § 750.82).

The evidence presented at trial, evaluated pursuant to the aforementioned standard, is more than sufficient to sustain Petitioner's convictions. Petitioner's arguments to the contrary are unpersuasive and based upon nothing more than his belief that the jury should have interpreted and weighed the evidence differently. Such is not a basis for habeas relief, however. Instead, to obtain relief, Petitioner must demonstrate that no rational trier of fact could have found him guilty beyond a reasonable doubt. The evidence, viewed in a light most favorable to the prosecution, is sufficient for a rational person to conclude, beyond a reasonable doubt, that Petitioner committed the crimes in question.

The Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence claim concluding that "[v]iewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that defendant assaulted Curtis. Defendant's convictions are supported by sufficient evidence." *People v. Buchanan*, Case No. 290942, Opinion at 1-2 (Mich. Ct. App., July 15, 2010). In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.        Suppression of Evidence**

Detective Cory Luker testified that the man who Amanda Bissell and Tiffany Cole observed with Curtis James on the morning in question was named Bruce Hunter. (Trial Transcript, February 11, 2009, 138). Luker indicated that Hunter was interviewed as part of the investigation into James' assault, but that he "simply disappeared" prior to trial and could not be located. Petitioner asserts that he is entitled to relief because the prosecution failed to produce Hunter as a witness at trial "in violation of the long established rule announced in *Brady v. Maryland*." Petitioner also asserts the prosecution's failure to produce Hunter for trial violated Michigan law.

A.        *Brady v. Maryland*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Wilson v. Mitchell*, 498 F.3d 491, 512 (6th Cir. 2007) (quoting *Brady*, 373 U.S. at 87). The material which must be disclosed under *Brady* "encompasses impeachment evidence as well as exculpatory evidence." *Wilson*, 498 F.3d at 512 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). To establish a *Brady* violation, Petitioner must establish: (1) the prosecution suppressed or withheld evidence, (2) such evidence was favorable to the defense, and (3) the suppressed evidence was material. *See United States v. Dado*, 759 F.3d 550, 559-60 (6th Cir. 2014).

The materiality requirement is not a sufficiency of the evidence test. *See In re McDonald*, 514 F.3d 539, 545-46 (6th Cir. 2008) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434-35

(1995)).  In other words, Petitioner is not required to demonstrate that consideration of the undisclosed evidence results in less than sufficient evidence to support his conviction.  This is because "the possibility of an acquittal of a criminal charge does not imply an insufficient evidentiary basis to convict."  *In re McDonald*, 514 F.3d at 546 (quoting *Whitley*, 514 U.S. at 434-35).  Also, the withheld evidence must be considered "collectively, not item by item."  *Whitley*, 514 U.S. at 436-37.  The materiality requirement is satisfied where "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (quoting *Whitley*, 514 U.S. at 435).  In short, Petitioner must demonstrate a "reasonable probability of a different result."  *Dretke*, 540 U.S. at 698 (quoting *Whitley*, 514 U.S. at 434).

Petitioner asserts that Hunter would have provided "exculpatory evidence," but does not describe the testimony Hunter allegedly would have provided.  The record, however, does contain what appears to be a sworn statement executed by Bruce Hunter on September 22, 2009.  (Dkt. #19).  In this statement, Hunter asserts the following.  On the morning in question, Petitioner arrived at Curtis James' apartment asking James "about his money."  James told Petitioner that he "didn't have his money," at which point Petitioner departed.  Shortly thereafter, Petitioner, accompanied by another man, returned to James' apartment.  The man who accompanied Petitioner began arguing with James and then "hit [James] in the head one time."  At this point, Hunter interjected that he would pay James' debt to Petitioner, at which point Petitioner and the other man departed.  Petitioner did not have a baseball bat and did not assault James.

Hunter further asserted that "they came once to subpoena me but I wasn't there and they never came back again to serve me the subpoena."  Hunter does not indicate who "they" are.

13

While it is not unreasonable to conclude that "they" is a reference to law enforcement, such conclusion is supported by inference only. Hunter also asserted that "I just want to be honest about it and that's what I told the detective." Hunter does not assert or suggest that he told law enforcement his version of the relevant events or that, if he did, his statements to law enforcement were consistent with the assertions in his sworn statement. Moreover, Petitioner has presented no evidence that Hunter's failure to testify at trial was in any way attributable to any action undertaken by law enforcement, the prosecution, or any other governmental employee or agent. Finally, the Court notes that the record contains evidence that the version of events which Hunter provided to law enforcement was in direct contradiction to his subsequent sworn statement. As the Michigan Court of Appeals observed:

> We do note that a summary of Hunter's statement to the police is contained in defendant's PSIR. According to the PSIR:
>
>> Hunter stated at approximately 7:30 a.m. that day, someone started knocking on the door and the victim didn't answer it. Whoever was knocking left and returned approximately 15 minutes later. The victim answered it and Hunter advised that he was in the living room and could not see who was at the door, but he heard the conversation and could hear a male subject asking for money owed to him. Hunter advised the subject left, however, a short time later, he heard the door open hard and heard a scuffle by the front door. Hunter advised this time he left the living room and entered the front door area to see the victim on the ground and two black males standing over him yelling at him about the money he owed them. Hunter further stated he saw a bat in the hand of one of the subjects who wore a white T-shirt. Hunter advised he got between this subject and the victim, who was still on the ground, and asked him not to hit him with the bat.

> Hunter's statement to the police is inconsistent with his affidavit, in which he averred that Curtis was only punched one time in the head by Farmer, that defendant never had a bat, and that Curtis was never hit with a bat.

*People v. Buchanan*, Case No. 290942, Opinion at 4-5 (Mich. Ct. App., July 15, 2010).

Simply stated, Petitioner cannot establish any the elements of a *Brady* claim. Specifically, Petitioner has failed to demonstrate that the prosecution suppressed or withheld evidence or that such evidence was favorable and material.

B.   Res Gestae Witness

Under Michigan law, the term res gestae witness "has been defined to include all persons who are eyewitnesses to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged offense." *People v. Hooks*, 360 N.W.2d 191, 193 (Mich. Ct. App. 1984). Under Michigan law, the prosecution is required to identify "all...res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." Mich. Comp. Laws § 767.40a(1) (1998). The prosecution is further required to "provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process on a witness." Mich. Comp. Laws § 767.40a(5). Petitioner argues that he is entitled to relief because the prosecution failed to produce Bruce Hunter, a res gestae witness, for trial.

Under federal law, however, there exists no such requirement. *See, e.g., Collier v. Lafler*, 419 Fed. Appx. 555, 559 (6th Cir., Mar. 30, 2011) ("Michigan's requirement that prosecutors produce res gestae witnesses is a matter of state law, and its enforcement is outside the scope of our

review"); *Smith v. Elo*, 1999 WL 1045877 at *2 (6th Cir., Nov. 8, 1999) (claim that prosecutor failed to call a res gestae witness is a state law issue not cognizable in federal habeas proceeding); *Moreno v. Withrow*, 1995 WL 428407 at *1 (6th Cir., July 19, 1995) (absent a denial of fundamental fairness, failure to call a res gestae witness is not cognizable in federal habeas proceeding); *Clark v. Hoffner*, 2014 WL 806393 at *9 (E.D. Mich., Feb. 28, 2014) ("[f]ederal law does not require the production of res gestae witnesses").

The federal courts can only consider habeas claims alleging violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Petitioner's claim rests upon a perceived violation of state law, therefore, relief is available only if the alleged error deprived Petitioner of "fundamental fairness in the trial process." *Hynes v. Birkett*, 526 Fed. Appx. 515, 520 (6th Cir., May 14, 2013). Given the contradiction between the statement Bruce Hunter made to the police and the assertions in his subsequent sworn statement, Petitioner cannot establish that securing Hunter's attendance at trial would have advanced his position. Thus, Petitioner cannot demonstrate that the alleged failure to secure Hunter's testimony at trial denied him of the right to a fair trial.

The Michigan Court of Appeals rejected this particular claim. *People v. Buchanan*, Case No. 290942, Opinion at 5-6 (Mich. Ct. App., July 15, 2010). This decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue on which habeas relief may be granted.

**III.        Ineffective Assistance of Counsel**

Finally, Petitioner asserts that he is entitled to habeas relief because he was denied the right to the effective assistance of trial counsel and appellate counsel.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111 (2009)). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of

17

probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

### A. Trial Counsel

Petitioner faults his attorney for failing to question Bruce Hunter at trial. Petitioner argues that this entitles him to relief because Hunter's testimony would have been exculpatory. As is recognized, an attorney's strategic decisions are "virtually unchallengeable." *See United States v. Washington*, 715 F.3d 975, 982 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 690-91). As previously noted, Hunter's statement to law enforcement was consistent with the other evidence of Petitioner's guilt. Given Hunter's inculpatory statements to law enforcement it was perfectly reasonable for counsel to not question Hunter at trial. Thus, Petitioner cannot establish that his counsel's strategy on this matter was deficient. Moreover, even if the Court assumes that counsel's

strategy was somehow deficient, Petitioner cannot establish that the outcome of his trial would have been different even had Hunter testified.

      B.      Appellate Counsel

Petitioner argues that he is entitled to relief because his appellate attorney failed to assert on appeal the sufficiency of the evidence and suppression of evidence claims discussed above. These particular issues, however, are without merit for the reasons articulated above. Thus, even if the Court assumes that counsel's performance was deficient, Petitioner cannot establish that such resulted in prejudice.

The Michigan courts rejected Petitioner's ineffective assistance of counsel claims. *People v. Buchanan*, Case No. 290942, Opinion at 4-6 (Mich. Ct. App., July 15, 2010). This determination was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Furthermore, this determination was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the undersigned recommends that these claims be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Buchanan's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  December 3, 2014          /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge